UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMOS N. JONES,<br><br>   *Plaintiff*,<br><br> v.<br><br>OGLETREE, DEAKINS, NASH, SMOAK & STEWART P.C.,<br><br>   *Defendant*. | Civil Action No. 23-3488 (RDM) |

## MEMORANDUM OPINION

In this action, Plaintiff Amos N. Jones, an attorney proceeding *pro se*, asserts claims against the law firm Ogletree, Deakins, Nash, Smoak & Stewart P.C. ("Ogletree"), under the Civil Rights Act of 1871, 42 U.S.C. § 1985, the D.C. Bias-Related Crime Act, D.C. Code § 22-3701 *et seq.*, and D.C. common law. Ogletree moves to dismiss the complaint for failure to state a claim. For the reasons given below, the Court will **GRANT** Ogletree's motion to dismiss Count One of the complaint and will **DECLINE** to exercise supplemental jurisdiction over Counts Two through Six of the complaint.

**I.   BACKGROUND**

The Court has gleaned the following factual allegations from the complaint, which, for purposes of Ogletree's motion to dismiss, the Court takes as true. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). These facts are supplemented by opinions and orders in related litigation in this District and other federal courts, which are referenced in the complaint and "proper subject[s] of judicial notice." *Gumpad v. Comm'r of Soc. Sec. Admin.*, 19 F. Supp. 3d 325, 328 (D.D.C. 2014).

This is not the first time Jones and Ogletree have been adversaries. Jones alleges that he is a "civil rights advocate, attorney, and ordained Baptist deacon resident in Washington, D.C." Dkt. 1 at 10 (Compl. ¶ 15). Ogletree is "an international law firm" that has litigated against Jones and his clients on several occasions. *Id.* at 12 (Compl. ¶ 22). This case arises from one of those prior lawsuits, in which Jones sued his former employer Campbell University Law School "for breach of contract and employment discrimination." *Id.* at 13 (Compl. ¶¶ 27–28). Ogletree represented Campbell University with a team of five attorneys, whom Jones has dubbed "The Ogletree Deakins Five." *Id.* at 13 (Compl. ¶ 28). Jones originally filed suit against Campbell University in this district, but the Court concluded that it lacked personal jurisdiction over the Campbell University defendants, and that Jones's arguments to the contrary were so frivolous that they warranted $2,500 in Rule 11 sanctions. *See* Opinion and Order at 6, *Amos N. Jones v. Campbell University et al.*, No. 5:20-cv-29-BO (E.D.N.C.) (hereinafter "*Employment Action*"), Dkt. 45 at 6. The Court then transferred Jones's case to the Eastern District of North Carolina. *Id.* at 7.

Litigation proceeded in that district, and, after filing an answer to Jones's complaint, Campbell University—through Ogletree—sought discovery related to Jones's medical condition during the summer and fall of 2020. The basis for Campbell University's discovery requests was to determine whether "[Jones]'s allegations for emotional or psychological injury are reliable and credible, and whether Defendants' conduct proximately caused any emotional or psychological injury alleged by [Jones]." *Employment Action*, Dkt. 98 at 7. Jones had previously provided "authorization to release medical records" to Campbell University in July of 2020, Dkt. 1 at 27

2

(Compl. ¶ 71),[1] but Campbell University also sought to conduct an "independent mental examination" of Jones, *Employment Action*, Dkt. 98 at 7.  Jones opposed this discovery, but the District Court for the Eastern District of North Carolina concluded that Jones had placed his mental condition "in controversy" and, accordingly, granted Campbell University's motion to compel the independent mental examination.  *Id.* at 8, 11.  Thereafter, Campbell University moved for entry of a protective order regarding confidential documents, *Employment Action*, Dkt. 111, but Jones opposed Campbell University's motion and proposed a different protective order, *Employment Action*, Dkt. 114.  Meanwhile, Campbell University served a subpoena on Jones's physician to obtain Jones's medical records.  Dkt. 1 at 24–25 (Compl. ¶ 64); *see also* Dkt. 1-2 at 9.  Campbell University also noticed Jones's deposition, but Jones failed to appear.  *Employment Action*, Dkt. 186 at 4.  By November 2020, Jones still had not been deposed or subject to the independent mental examination, prompting Cambell University to file another motion to compel.  *See Employment Action*, Dkt. 186 at 2 (citing Dkt. 134 (motion to compel)).

At the end of November 2020, Jones filed a motion to stay the case on the grounds that he "was diagnosed with an extreme and alarming presence of polyps near the brain . . . with referral to immediate surgery."  *Employment Action*, Dkt. 141 at 3; *see* Dkt. 186 at 2.  The district court granted Jones's motion to stay.  *Employment Action*, Min. Order (Dec. 3, 2020).  One month before the stay was set to expire, Jones moved to extend the stay, *Employment Action*, Dkt. 186 at 2; Dkt. 146 at 1–3, but the court denied that motion, *Employment Action*, Dkt. 155.  Jones then filed a "Notice of Voluntary Dismissal," stating that "This Notice Dismisses this Action Immediately."  *Employment Action*, Dkt. 186 at 2–3; *see* Dkt. 156.  Campbell University

---

[1] On November 19, 2020, Jones executed a document purporting to revoke his authorization to release medical records, and he apparently filed that notice with the district court on December 2, 2020.  *Employment Action*, Dkt. 144-5.

opposed, arguing that Jones could not unilaterally dismiss the case because Campbell University had already answered the complaint. *Employment Action*, Dkt. 186 at 8; *see* Dkt. 157.  Finally, in July 2021, the district court granted Jones's motion for voluntary dismissal without prejudice over Campbell University's objection, *Employment Action*, Dkt. 186 at 8, but awarded Campbell University costs and fees associated with Jones's failure to attend his own deposition as a sanction, *id.* at 6–7.

On the same day Jones moved to extend the stay in his suit against Campbell University, however, he filed suit against Ogletree in this District. *Amos N. Jones v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C.*, No. 1:21-cv-00524 (D.D.C.) (hereinafter "*Ogletree Action*").  In that case, Jones alleged nearly all of the same claims he presses against Ogletree now.  *See Ogletree Action*, Dkt. 1 (Compl.).  Ogletree's counsel sent Jones's counsel a Rule 11 letter.  *See* Dkt. 1-2 at 2.  Jones then voluntarily dismissed that case on April 26, 2021. *Ogletree Action*, Dkt. 4.

This brings us to the present dispute.  More than two-and-a-half years after voluntarily dismissing the *Ogletree Action*, Jones filed this case, alleging substantially similar claims.  Jones's complaint is neither clear nor concise, but his claims are apparently based upon three incidents.  The first incident relates to Jones and Campbell University's attempts to settle the *Employment Action*.  Jones alleges that in August 2020—before Campbell moved to compel medical discovery—Jones and Campbell "reached material agreement on the major points of settlement."  Dkt. 1 at 21 (Compl. ¶ 53).  Then, "[o]ut of the blue," Ogletree "demanded" that Jones "accept additional terms" in the settlement agreement.  *Id.*  The "additional term[]" was a non-disparagement clause that included both the Campbell University defendants and the Ogletree attorneys litigating the case.  Dkt. 1 at 41–44 (Compl. ¶¶ 126–27).  Jones responded to

4

this new term by sending Campbell University and Ogletree a Rule 11 letter, *see id.*, after which Campbell University "withdrew the settlement agreement entirely," *id.* at 44 (Compl. ¶ 128) (emphasis omitted). Jones alleges that the "Ogletree Deakins Five" "destroyed" the settlement agreement, *id.* at 41 (Compl. ¶ 126), and "revealed" themselves as "interested parties," *id.* at 39 (Compl. ¶ 119). In Jones's view, Ogletree only "pretended" that it was representing Campbell University, "while instead working its own aims"—specifically, "to enter into a settlement agreement with [Jones]." *Id.* at 40 (Compl. ¶¶ 120–23). Jones alleges that Ogletree's conduct constituted fraud and tortious interference with contract in violation of District of Columbia law. *Id.* at 39–44 (Compl. ¶¶ 117–28).

The second incident appears to relate to Ogletree's efforts to conduct medical discovery in the *Employment Action*. Jones claims that Ogletree made a "series of harassing telephone calls" and "reinforc[ed] improper subpoenas" directed to Jones's physician, Dr. Shapiro. *Id.* at 7 (Compl. ¶ 5). In a letter quoted in the complaint, Ogletree informed Jones: "We were forced by Mr. Jones to subpoena those records from Dr. Shapiro because of Mr. Jones's refusal to voluntarily produce them. We have served two subpoenas on Dr. Shapiro and still do not have Mr. Jones's records." *Id.* at 7 (Compl. ¶ 6). According to Jones, Ogletree also allegedly "demand[ed]" that Jones's physician and his staff "appear for a deposition within hours of the improper notices," "filed a Motion to Compel [Jones] to . . . sit for an 'independent medical examination,'" and, at one point, issued a "lone" and "untimely" interrogatory seeking medical information. *Id.* at 7–8, 24, 26 (Compl ¶¶ 7, 63, 64, 67). Finally, Jones alleges that Ogletree "stalk[ed]" his physician, "to the point where [Jones] remains, to this day, indefinitely unable to obtain pre-operative care" for the "harmful polyps" in his brain. *Id.* at 2 (Compl. ¶ 2a). Ogletree allegedly "caused the hospitalization of [Jones]" and "destroy[ed] his access to medical care." *Id.*

5

at 4 (Compl. ¶¶ 3, 3a). Jones claims that Ogletree's "medical-harassment campaign," *id.* at 28 (Compl. ¶ 76), violated the Civil Rights Act of 1871, 42 U.S.C. § 1985, constituted tortious interference with "physician-patient contract," intentional infliction of emotional distress, and violated the D.C. Bias-Related Crimes Act, D.C. Code § 22-3701 *et seq.* Dkt. 1 at 36–37, 44–47 (Compl. ¶¶ 103–16, 129–44).

The third incident is the most difficult to parse, but Jones appears to allege that Ogletree is responsible for a racist attack on a historic Black church in Washington, D.C., as well as the January 6 riot at the U.S. Capitol. Jones alleges that in October 2020, while Campbell University was attempting to schedule Jones's deposition and the independent medical examination, Jones appeared in a YouTube video clip at the Ashbury United Methodist Church. Ogletree then "publicized" this video by filing it on the docket in the *Employment Action*, Dkt. 1 at 32 (Compl. ¶ 88), and nearly two months later, on December 12, 2020, a "white-male mob angered by the federal election results descended upon" the church, *id.* at 32 (Compl. ¶ 93). The mob tore down and burned the church's Black Lives Matter banner. *Id.* at 32–33 (Compl. ¶ 93). Jones reasons that Ogletree is responsible because Ogletree publicized the video of Jones at the church two months earlier, and the perpetrators were "associated with the ideology promoted by" Ogletree. *Id.* at 33 (Compl. ¶ 95). Jones further alleges that Ogletree's "plan" "culminat[ed]" in the January 6, 2021 attack on the U.S. Capitol. *Id.* at 37 (Compl. ¶ 111). Jones claims that Ogletree's efforts to promote violent conduct and threats directed at the Asbury United Methodist Church and the U.S. Capitol violated the Civil Rights Act of 1871, 42 U.S.C. § 1985, constituted intentional infliction of emotional distress, and violated the D.C. Bias-Related Crimes Act, D.C. Code § 22-3701 *et seq.* Dkt. 1 at 36–39, 45–47 (Compl. ¶¶ 103–16, 131–44).

Based on these incidents, Jones asserts one federal and five D.C. law causes of action against Ogletree: discrimination and conspiracy to interfere with civil rights, in violation of 42 U.S.C. § 1985(2) and (3) (Count I); fraud/false pretenses, in violation of D.C. common law (Count II); tortious interference with settlement contract, in violation of D.C. common law (Count III); tortious interference with physician-patient contract, in violation of D.C. common law (Count IV); intentional infliction of emotional distress, in violation of D.C. common law (Count V); and bias-related conspiracy, theft, conversion of private property, and extortion, in violation of D.C. Code § 22-3701 *et seq.* (Count VI). Dkt. 1 at 36–47 (Compl. ¶¶ 103–44). Jones asserts that the Court has federal jurisdiction over his § 1985 claim pursuant to 28 U.S.C. § 1331 and that the Court may exercise supplemental jurisdiction over his related state law claims pursuant to 28 U.S.C. § 1367. Dkt. 1 at 12 (Compl. ¶¶ 23–24).

Ogletree moves to dismiss all counts, Dkt. 11, which Jones opposes, Dkt. 16.

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The facts alleged need not be "detailed," but they must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To determine whether this standard has been met, the Court must "draw on its judicial experience and common sense." *Id.* at 679. It is not enough to raise the "sheer possibility that a defendant has acted unlawfully." *Id.* at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Moreover, although *pro se* complaints are generally "held to less stringent standards," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), this leniency is not afforded to *pro se* litigants who, like Jones, are licensed attorneys, *Spence v. United States Dep't of Veterans Affs.*, 109 F.4th 531, 536 (D.C. Cir. 2024).

### III.   ANALYSIS

Ogletree argues that Jones's complaint should be dismissed for three separate reasons: (1) Ogletree's alleged actions were taken in the course of litigating the *Employment Action* and are thus protected by the judicial proceedings privilege, (2) Jones's claims are all barred by the statute of limitations, and (3) Jones fails adequately to plead facts sufficient to state a claim under federal or D.C. law.  Dkt. 11-1 at 14, 21, 23.  Although Ogletree's first and second arguments are compelling, the Court need not reach them.  The Court's analysis begins and ends with Jones's failure to state a claim under 42 U.S.C. § 1985.  Because the Court concludes that Jones fails to state a claim under § 1985, because it is early in the litigation, and because Jones's D.C. law claims do not touch upon any federal interests, the Court will decline to exercise supplemental jurisdiction over Jones's D.C. law claims.

**A.   Count One: Conspiracy to Interfere with Civil Rights**

Jones's first cause of action against Ogletree is based upon 42 U.S.C. § 1985.  Section 1985 "was originally enacted as § 2 of the Civil Rights Act of 1871, 17 Stat. 13." *Kush v. Rutledge*, 460 U.S. 719, 724 (1983).  The Civil Rights Act, also known as the Ku Klux Klan Act of 1871, "has its roots in the racial violence that erupted in the southern states at the end of the Civil War" and was intended to protect civil rights and the operation of the federal government, including federal court proceedings.  *McCord v. Bailey*, 636 F.2d 606, 615 (D.C. Cir. 1980).

8

Jones invokes subsections (2) and (3) of the Act, which prohibit two different types of conspiracies to interfere with civil rights. Dkt. 1 at 38 (Compl. ¶ 115). Subsection (2), titled "[o]bstructing justice," prohibits conspiracies to deter a party or witness from attending court or testifying, as well as conspiracies to retaliate against parties or witnesses. 42 U.S.C. § 1985(2). Subsection (3), titled "[d]epriving persons of rights or privileges," prohibits conspiracies to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws" on account of any protected trait. *Id.* § 1985(3); *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 688 (D.C. Cir. 2009) ("Section 1985(3) provides a cause of action against two or more persons who participate in a conspiracy motivated by class-based discriminatory animus.") Although far from clear, Jones's claim under § 1985 appears to be based upon two of the incidents described above. First, he alleges that Ogletree "interfere[ed] with [his] physician-patient relationship" in "furtherance of [the alleged co-conspirator's] common goal of preventing . . . Jones from actualizing medical care and enjoying a recovery." Dkt. 1 at 36 (Compl. ¶¶ 105–07). According to Jones, by seeking medical discovery and "abusing" Jones's physician, Ogletree deprived him of his rights under D.C. Code §§ 22-1314.02 (prohibiting "interfer[ance] with access to or from a medical facility"), 14-307 (setting requirements for the release of medical records), and the federal Health Insurance Portability and Accountability Act of 1996, Pub. L. 104-191 ("HIPAA"). Dkt. 1 at 23–28, 37–38 (Compl. ¶¶ 62–78, 112). Second, he alleges that Ogletree "promoted an assembly of persons to engage in tumultuous and violated conduct or the threat of it that created grave danger of harm to [Jones] and other similarly situated African-Americans, including the congregation of the Asbury United Methodist Church," and engaged in other misconduct, ultimately "culminating in" the January 6 attack on the Capitol. *Id.* at 36–37 (Compl. ¶¶ 109–11). The Court must, then, consider whether

these allegations are sufficient to state a claim under § 1985(2) (obstructing justice or intimidating a party or witness) or § 1985(3) (depriving a person of rights or privileges).

**1.**

The Court starts with § 1985(2). "To state a claim under this provision . . . , 'a plaintiff must allege (1) a conspiracy between two or more persons, (2) to deter a party, witness or juror from attending or testifying in any matter pending in any court of the United States, which (3) results in injury to the plaintiff.'" *Moore v. Castro*, 192 F. Supp. 3d 18, 36 (D.D.C. 2016), *aff'd sub nom. Moore v. Carson*, 775 F. App'x 2 (D.C. Cir. 2019) (citation omitted). As explained below, the Court concludes that Jones has failed to state a claim under subsection (2).

Ogletree first argues that Jones's § 1985 claims fail as a matter of law under the intracorporate conspiracy doctrine, which posits that a single legal entity—here, Ogletree— cannot possibly conspire with itself. Dkt. 11-1 at 30. To date, the D.C. Circuit has declined to decide whether this doctrine applies to § 1985 claims, *see Bowie v. Maddox*, 642 F.3d 1122, 1130–31 (D.C. Cir. 2011), and there is no reason to plow new ground in this case because Jones, in any event, fails to allege facts sufficient to establish a § 1985 conspiracy. A conspiracy requires "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983); *see also Lenard v. Argento*, 699 F.2d 874, 882 (7th Cir. 1983). Here, however, the complaint fails to identify an agreement between two or more individuals to commit an unlawful act but, rather, merely asserts in wholly conclusory terms that "Ogletree" "conspired" and "acted in concert." Dkt. 1 at 36 (Compl. ¶¶ 106, 108). "Conclusory allegations of an agreement will not suffice."

10

*Burnett v. Sharma*, 511 F. Supp. 2d 136, 143 (D.D.C. 2007); *see also Iqbal*, 556 U.S. at 678. And even giving Jones the benefit of the doubt and reading the complaint to allege more than it does, an agreement to engage in court-authorized discovery is not an agreement "to participate in an unlawful act." Nor is it possible to read the complaint to allege that anyone from Ogletree participated in an agreement with those who engaged in misconduct at the Asbury United Methodist Church on December 12, 2020, or at the United States Capitol on January 6, 2021.

More fundamentally, Jones does not allege any obstruction of justice. The complaint contains no indication that anyone was deterred from attending or testifying in any court proceeding or retaliated against for doing so. To be sure, Jones devotes much of his complaint to recounting his legal battles with Ogletree, including Ogletree's efforts to obtain discovery from his doctor. The complaint, however, contains no allegation that this was designed to prevent any person's participation the *Employment Action*. Dkt. 1 at 28 (Compl. ¶ 76). If anything, Jones's allegations support the opposite conclusion: he alleges that Ogletree was attempting to *compel* participation by noticing Jones's deposition and by serving subpoenas for his medical records—discovery that was explicitly authorized by a U.S. district court and that went to a material issue in the case. As for the second alleged set of incidents, there is no allegation that the "mob" or the January 6 riot was in any way intended to interfere with any judicial proceedings, much less a proceeding in which Jones had a personal stake.

Finally, Jones can hardly maintain that he was injured because Ogletree forced him to drop his case. To the contrary, as he acknowledges, he was the one who sought voluntarily to dismiss the case, Dkt. 1 at 3 (Compl. ¶ 2c); *see also Employment Action*, Dkt. 186 at 2 (citing Dkt. 118 ("Plaintiff's Rule 41 Motion to Dismiss")), and Ogletree opposed that effort because it

11

hoped to obtain a final resolution of the case on the merits, *see Employment Action*, Dkt. 186 at 2.

The Court, accordingly, concludes that Jones has failed to state a claim under § 1985(2).

**2.**

Jones's claim under § 1985(3) is equally deficient. To state a claim under this subsection, a plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, . . . and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in her person or property or deprived of any right or privilege of a citizen of the United States.

*Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 688 (D.C. Cir. 2009) (quoting *Martin v. Malhoyt*, 830 F.2d 237, 258 (D.C. Cir. 1987) (alteration in original). Notably, "[t]he statute does not apply to *all* conspiratorial tortious interferences with the rights of others, but only those motivated by some class-based, invidiously discriminatory animus." *Id.* (emphasis in original) (citation omitted).

Again, Jones's complaint is devoid of factual material sufficient to state a claim. As explained above, the complaint contains only "conclusory allegations" of a conspiracy; it "fails to allege the existence of any events, conversations, or documents indicating that there was ever an agreement or 'meeting of the minds' between any of the defendants" to deprive Jones of any legal rights or protections, *McCreary v. Heath*, 2005 WL 3276257, at *5–6 (D.D.C. Sept. 26, 2005), let alone an agreement "motivated" by "class-based, invidiously discriminatory animus," *Atherton*, 567 F.3d at 688.

Even if there were a conspiracy, Jones does not explain how Ogletree's actions "deprived" him of any protected "right or privilege." 42 U.S.C. § 1985(3). With respect to the first incident described above, Jones alleges the following conduct by Ogletree: (1) "relentlessly

issu[ing] subpoenas" for Jones's medical records, (2) calling Jones's doctor's office, (3) filing a motion to compel Jones "to sit for an 'independent medical examination,'" (4) serving an "untimely interrogatory," and (5) exchanging letters regarding the parties' "discovery disputes." Dkt. 1 at 23–26 (Compl. ¶¶ 64, 67, 70). In Jones's view, this conduct deprived him of his rights under "the D.C. interference-with-access-to-a-medical facility act," (D.C. Code § 22-1314.02), the D.C. Code provision governing the release of confidential medical records (D.C. Code § 14-307), and HIPAA. Dkt. 1 at 27 (Compl. ¶¶ 73–75).

As an initial matter, Jones's reliance on D.C. law is unavailing, as § 1985 "provide[s] a remedy only for the deprivation of federally protected rights." *Jackson v. Donovan*, 856 F. Supp. 2d 147, 149–50 (D.D.C. 2012); *Alexander v. Washington Gas Light Co.*, 481 F. Supp. 2d 16, 31 (D.D.C. 2006) ("There can be no recovery under § 1985(3) absent a violation of a substantive federal right." (citation omitted)). That leaves HIPAA, a statute that regulates healthcare providers and generally prohibits the disclosure of confidential medical information without the patient's consent. *See* 42 U.S.C. §§ 1320d–1 to d–7. HIPAA, however, vests exclusive enforcement authority in the Secretary of Health and Human Services, and "Congress's choices about enforcement authority has consequences: 'The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'" *Stewart v. Parkview Hosp.*, 940 F.3d 1013, 1015 (7th Cir. 2019) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)); *cf. id.* (holding that HIPAA is not enforceable under § 1983); *Hill v. Smoot*, 308 F. Supp. 3d 14, 23 (D.D.C. 2018) (holding that HIPAA does not "confer[] privacy rights" and that courts are "in agreement that [HIPAA] does not support a private right of action") (internal quotation marks and citation omitted).

In any event, even assuming HIPAA is enforceable under § 1985, Jones has not alleged that Ogletree violated the statute. Jones's theory appears to be that, by serving discovery requests for his medical information (in response to his lawsuit, in which he claimed medical injuries), Ogletree deprived him of his rights under HIPAA. But HIPAA does not prohibit serving lawful discovery requests, and HIPAA regulations even "unequivocally permit[] health care providers and other covered entities to disclose protected health information without patient consent in judicial proceedings," *Bayne v. Provost*, 359 F. Supp. 2d 234, 237 (N.D.N.Y. 2005); *see* 45 C.F.R. § 164.512(e)(ii) (allowing covered entities to respond to subpoenas under certain conditions), as long as the patient is on notice of the request. As Jones acknowledges, the parties were actively litigating claims that turned in part on Jones's medical condition. Jones had even provided Ogletree with an "authorization to release medical records" before Ogletree began serving subpoenas, Dkt. 1 at 27 (Compl. ¶ 71), and the court had granted Ogletree's motion to compel additional medical discovery, *see Employment Action*, Dkt. 98 at 8, 11. Although Jones was evidently perturbed by Ogletree's litigation tactics, the Court is unable to discern any violation of his federal rights (assuming HIPAA creates any privately enforceable rights). To the extent Jones believed that these discovery requests were improper, the appropriate forum to raise those objections was in the Eastern District of North Carolina.

Jones's allegations with respect to the second incident suffer from the same flaws. Jones points to Ogletree "publicizing" the video of Jones at the Ashbury United Methodist Church in October 2020 (which, Jones reasons, caused a white mob to attack the church nearly two months later and eventually led to the riot at the U.S. Capitol on January 6). Dkt. 1 at 30–32 (Compl. ¶¶ 85–93). Here too, Jones does not allege any facts that would support a § 1985 claim.

14

Ogletree also argues—and the Court agrees—that this claim should be dismissed as utterly implausible on its face. Dkt. 11-1 at 34; *see Iqbal*, 556 U.S. at 678.

In light of these numerous flaws, Ogletree argues that Jones's § 1985 claim should be dismissed with prejudice. Dkt. 11-1 at 39. Jones responds that he should be permitted to file an amended complaint, insisting that his claims are "not deficient" and that he would benefit from "assistance of counsel." Dkt. 16 at 39–40. In general, leave to amend should be freely granted, but "a court may, in its discretion, deny leave to amend in cases of 'undue delay, bad faith. or futility of amendment.'" *Carty v. Author Sols., Inc.*, 789 F. Supp. 2d 131, 135 (D.D.C. 2011) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)). Moreover, "[w]here a court determines that the assertion of additional facts consistent with the challenged pleading would not remedy the deficiency, dismissal of a claim with prejudice is appropriate." *Id.* at 136.

The Court agrees with Ogletree that any amendment would be futile. As a *pro se* attorney, Jones is aware of the pleading standards and relevant law, yet his complaint is rife with "irrelevant and distracting accusations" that could not possibly provide grounds for relief. *Robinson v. District of Columbia*, 283 F.R.D. 4, 7 (D.D.C. 2012). Jones describes himself as "Top 100-Lawyers ranked" and a "respected appellate attorney," but provides no explanation for why his complaint is so deficient on so many different levels. Dkt. 1 at 11 (Compl. ¶¶ 17, 20). Even more importantly, although Jones disputes Ogletree's contention that permitting him to file an amended complaint would prove futile, Dkt. 16 at 39–40, he fails to explain how he could possibly cure any—much less all—of the deficiencies described above. No set of "additional facts," for example, could remedy the flaws inherent in Jones's claim that Ogletree is somehow responsible for the misconduct at the Asbury United Methodist Church in December 2020 or the attack on the U.S. Capitol on January 6. *Carty*, 789 F. Supp. 2d at 136. Nor does Jones explain

15

how any additional allegations regarding the discovery that Ogletree sought about Jones's medical condition could possibly support a § 1985 claim.

Were this a case in which the defendant had identified technical pleading deficiencies or in which the plaintiff had identified additional facts that might fill a critical gap in the complaint, the Court would grant leave to amend. Here, however, Jones—an experienced lawyer—offers no reason whatsoever to believe that § 1985 provides an appropriate vehicle to relitigate discovery and related disputes from a case that, at Jones's request, the United States District Court for the Eastern District of North Carolina dismissed four years ago.

The Court, accordingly, concludes that Jones's § 1985 claim should be dismissed with prejudice.

**B.     Remaining Claims**

In Counts Two through Six, Jones alleges violations of D.C. statutory and common law. *See* Dkt. 1 at 39–47 (Compl. ¶¶ 117–44). When Jones filed his complaint, the Court's jurisdiction was premised on federal question jurisdiction over his § 1985 claim, and supplemental jurisdiction over the D.C. law claims because they derived from the same "common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966); *see also* 28 U.S.C. § 1367(a). But now that the Court has concluded that Jones's lone federal claim cannot stand, "it has the discretion to exercise—or decline to exercise—supplemental jurisdiction over any state-law claims that remain." *Deppner v. Spectrum Health Care Res., Inc.*, 325 F. Supp. 3d 176, 190 (D.D.C. 2018) (emphasis omitted); *see also Ali Shafi v. Palestinian Auth.*, 642 F.3d 1088, 1097 (D.C. Cir. 2011) ("Whether to retain jurisdiction over pendent . . . claims after the dismissal of the federal claims is a matter left to the sound discretion of the district court[.]" (quotation marks and citation omitted)). Guiding that discretion are "[g]eneral

equitable factors . . . including judicial economy, convenience, fairness, and comity." *Pollard v. District of Columbia*, 191 F. Supp. 3d 58, 82 (D.D.C. 2016) (quotation marks and citation omitted); *see also Deppner*, 325 F. Supp. 3d at 190–91.  In the mine run of cases, however, "the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1267 (D.C. Cir. 1995).

Given that this case is in its earliest stages and does not now raise any issues of federal interest, the Court concludes that judicial economy, convenience, fairness, and comity point towards declining jurisdiction over Jones's D.C. law claims.  Moreover, dismissal will not affect Jones's ability to refile his claims in D.C. Superior Court.  If Jones's claims were not already time-barred when he filed his complaint, § 1367(d) provides that any statute of limitations will be tolled "for a period of 30 days after" this dismissal.  28 U.S.C. § 1367(d); *Edmondson*, 48 F.3d at 1267.  The Court, accordingly, declines to exercise supplemental jurisdiction over Jones's D.C.-law claims and will dismiss those claims without prejudice.

## CONCLUSION

For the reasons explained above, the Court will **DISMISS** Jones's claim under 42 U.S.C. § 1985 with prejudice, will decline to exercise supplemental jurisdiction over his D.C. law claims, and will, accordingly, **DISMISS** those claims without prejudice.

A separate order shall issue.

/s/ Randolph D. Moss  
RANDOLPH D. MOSS  
United States District Judge

Date:  March 30, 2025